[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On October 17, 1996, the plaintiff, Scott Schrimp, commenced this action against the defendant, Buzzuto's Inc. The complaint alleges three counts, setting forth causes for (1) violation or § 31-290(a), (2) intentional infliction of emotional distress, and (3) negligent infliction of emotional distress.
The defendant now moves for summary judgment as to count one on the ground that as a matter of law the defendant terminated the plaintiff for non-discriminatory or non-retaliatory reasons. The defendant maintains that the plaintiff has not met his initial burden of proof under General Statutes § 31-290(a) which requires some proof of improper motive on the employer's part. In opposition, the plaintiff argues that a question of the summary judgment. Also, the plaintiff maintains that an issue of material fact exists regarding the defendant's motive for terminating the defendant, and thus, the defendant's motion should be denied. CT Page 10390
The defendant also moves for summary judgment as to counts two and three, asserting that the plaintiff has not sufficiently alleged facts to support the claims of intentional and negligent infliction of emotional distress. Specifically, the defendant argues that the plaintiff has not alleged any extreme or outrageous conduct nor any offensive or unreasonable conduct on the defendant's part. The plaintiff has not presented an opposing argument to the defendant's motion as to counts two and three.
In support of his motion the defendant has submitted the affidavit of Kevin R. Daly, Bozzuto's Inc.'s Director of Legal Affairs, with six exhibits[1], and a transcript of the plaintiff's deposition with eleven exhibits[2]. The plaintiff has submitted a memorandum in opposition supported by twelve exhibits[3].
The plaintiff's complaint arose as a result of the following sequence of events. On or about March 20, 1996, the plaintiff sustained an injury while working for the defendant. (Complaint, Count One, ¶ 4.) The plaintiff filed a workers' compensation claim and received workers' compensation benefits thereafter. (Complaint, Count One, ¶¶ 5 6.) After the injury, the plaintiff, unable to return to work, received various treatments for his injury. (Affidavit of Kevin R. Daly, ¶¶ 4-6.) On May 28, 1996, Dr. Teresa Ponn, a surgeon to whom the plaintiff was referred by the plaintiff's family physician, told the plaintiff that he would be able to return to work on light duty. (Deposition of Scott Schrimp, page 28.)
On July 22, 1996, Dr. Jacobs of Bradley Healthcare, the defendant's chosen provider of occupational health services, concluded that the plaintiff was able to return to work on a full time basis. (Affidavit of Kevin R. Daly, ¶ 6.) Dr. Jacobs sent a letter, which stated his opinion regarding the plaintiff's ability to return to work, to Mr. Andrew O'Leary, Bozzuto's workers' compensation administrator. (Affidavit of Kevin R. Daly, ¶ 6; Dr. Jacobs' Letter, Plaintiff's Exhibit 8.) Nevertheless, the plaintiff did not return to work after he was discharged to regular duty by Dr. Jacobs. (Affidavit of Kevin R. Daly, ¶ 7.) On August 28, 1996, the defendant, through their attorney Kevin R. Daly, sent a letter to the plaintiff requesting that the plaintiff report to work on September 3, 1996. (Affidavit of Kevin R. Daly, ¶ 7.) After sending the August 28th letter, the plaintiff and his attorney, John D'Elia, contacted the defendant and indicated that the CT Page 10391 plaintiff was still unable to return to work. (Affidavit of Kevin R. Daly, ¶ 8.) The defendant orally agreed not to take any further action until September 13, 1996 and to wait for the plaintiff to provide proof that would substantiate the plaintiff's inability to return to work. (Affidavit of Kevin R. Daly, ¶ 9.) The defendant never received any medical reports, other proof, or a request for additional time. The defendant, therefore, terminated the plaintiff as of September 16, 1996 for failing to return to work. (Affidavit of Kevin R. Daly, ¶ 10, Exhibit F.) The defendant asserts that they terminated the plaintiff because of his failure to report to work. (Affidavit of Kevin R. Daly, ¶ 11.)
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Citations omitted; internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552,554, 707 A.2d 15 (1998). The movant has the burden of demonstrating the absence of any genuine issue of material fact.Gupta v. New Britain General Hospital, 239 Conn. 574, 582,687 A.2d 111 (1996). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . (Citation omitted; internal quotation marks omitted.) Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751-52, 660 A.2d 810 (1995).
"[T]he party opposing such a motion [for summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Emphasis omitted.) Gupta v. New Britain General Hospital, supra,239 Conn. 582. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . ." (Citations omitted; internal quotation marks omitted.) Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990).
"[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994).
"[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of CT Page 10392 fact." Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 250,618 A.2d 506 (1992).
A. Count One — Violation of General Statutes § 31-290a
"Section 31-290a does not require an employer to retain an employee unable to perform his or her work simply because that inability resulted from a work related injury or illness. . ." (Citations omitted; internal quotation marks omitted.) Erisoty v.Merrow Machine Co., 34 Conn. App. 708, 711, 643 A.2d 898, cert. denied 231 Conn. 908, 648 A.2d 151 (1994).
"The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . ." Id., 710.
A question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment. Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994).
The defendant argues that the facts demonstrate that their sole motivation for terminating the plaintiff was the plaintiff's failure to return to work as requested in September of 1996. Also, the defendant asserts that the plaintiff has not alleged facts or presented any evidence indicating that he was unable to return to work. The defendant cites, Chiaia v. Pepperidge Farm,Inc., 24 Conn. App. 362, 588 A.2d 652 (1991), to support its argument. In Chiaia, the court affirmed the workers' compensation commissioners' denial of claims brought under § 31-290a. The court agreed with the commissioner and found that the plaintiffs had not met the initial burden of proof in a claim arising under General Statutes § 31-290a. Id., 369. The court found that the plaintiffs' cause of action under § 31-290a lacked some evidence of the defendant's improper motive, and therefore was without legal basis. Id., 366.
In opposition, the plaintiff argues than an in-house memorandum brings the defendant's intent into question, the Dan Kubik[4] letter to Doug Vaughn[5]. (Plaintiff's Memorandum in Opposition, Exhibit 5.) Kubik sent a memorandum to Doug Vaughn which recommended the termination of the plaintiff in order to avoid further liability. (Plaintiff's Memorandum in Opposition, Exhibit 5.) As a result of the Kubik Memo, Kevin Daly, Bozzuto's CT Page 10393 Director of Legal Affairs, sent a letter to the plaintiff requesting that the plaintiff report to work on September 3, 1996 and subsequently the termination letter of September 17, 1996. (Affidavit of Kevin R. Daly, ¶¶ 7 and 10.) The plaintiff submits that the Kubik memorandum demonstrates proof of the defendant's discriminatory motive as the basis of his termination. The plaintiff also argues that the letter raises the issues of motive and intent, and therefore summary judgment is not appropriate. The plaintiff maintains that a genuine issue of fact exists as to whether he defendant terminated the plaintiff in retaliation against him for filing his workers' compensation claim.
In the Kubik memorandum, Kubik states, "I recommend you terminate the individual [Scott Schrimp] and cease paying benefits as we are exposing us to further liabilities. " (Plaintiff's Memorandum in Opposition, Exhibit 5.) This statement tends to show that the termination of the plaintiff may not have been entirely motivated by the plaintiff's failure to report to work in September. Dr. Jacob indicated that the plaintiff could return to work as of July 22, 1996 and sent notice to the defendant. (Defendant's Memorandum in Support, Exhibit D.) Although, the defendant had notice of Dr. Jacob's release in late July, the defendant did not send a letter to the plaintiff requesting that he return to work until after the Kubik memorandum was circulated which was over a month after receiving Dr. Jacob's diagnosis. Also, the recommendation of termination came from an officer who was not primarily responsible for administrating the workers' compensation program. Based on the above, a reasonable person could find that the defendant's conduct may have been in retaliation for him filing a workers' compensation claim. Since, the defendant's motive and intent regarding the plaintiff's termination are in question, the court denies the defendant's motion for summary judgment as to count one.
B. Counts Two Three — Intentional and Negligent Infliction of Emotional Distress
"In order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme CT Page 10394 and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . ." DeLaurentis v. NewHaven, 220 Conn. 225, 266-267, 597 A.2d 807 (1991).
"Practice Book § 386 authoriz[es] the severance of claims and partial summary judgments[.]" Id., 255 n. 15.
We review this issue, as the plaintiff and the defendants did in their arguments before this court, as if the motion for summary judgment were a motion to strike testing the legal sufficiency of the allegations. . . ." Haynes v. Yale-New HavenHospital, 243 Conn. 17, 32 n. 17, 699 A.2d 964 (1997) . The defendant argues that the plaintiff has not allege facts or submitted evidence to demonstrate that the defendant exhibited extreme and outrageous conduct to support a claim of intentional infliction of emotional distress. The defendant asserts that the plaintiff is merely making a unsubstantiated allegation of extreme and outrageous conduct. (Complaint Count Two, ¶ 11.)
Although, the defendant's conduct brings into question its motive in terminating the plaintiff's employment, overall the defendant's conduct does not appear to demonstrate conduct that would exceed all bounds tolerated by a decent society. " [N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior. . . ." Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 88-89, 700 A.2d 655 (1997). Therefore, the defendant's motion for summary judgment is granted as to count two, because the plaintiff has failed to sufficiency allege extreme and outrageous behavior under count two.
As to count three, the defendant argues that the plaintiff did not allege anything offensive or unreasonable regarding the defendant's conduct to support a claim for negligent infliction of emotional distress. The defendant, as supported by the CT Page 10395 affidavit of Kevin Daly, initiated a process that resulted in the plaintiff's termination. The process involved letters to the plaintiff and phone conversations regarding the plaintiff's return to work. Although, the plaintiff maintains that he was not given enough time to recover from his injury, however Dr. Jacobs' evaluation on July 22, 1996, contradicts the plaintiff's contention, because Dr. Jacob released the plaintiff for regular duty on that date. Furthermore, the plaintiff failed to provide evidence of his inability to return to work when the plaintiff was given additional time to do so and as of December, 1997 still had not produced such evidence. (Affidavit of Kevin R. Daly, ¶¶ 11 12.) Therefore, the defendant's motion for summary judgment is granted as to count three, because the plaintiff has failed to sufficiently allege unreasonable conduct on the part of the defendant in the termination process under count three.
Howard F. Zoarski Judge Trial Referee